1
 2026 CO 4 The People of the State of Colorado, In Re Plaintiff: v. Austin Rhys McGee, Defendant: No. 25SA224Supreme Court of Colorado, En BancJanuary 12, 2026
          
 Larimer County District Court Case No. 21CR991 Honorable
 Susan Jasmine Blanco, Judge.
 
 2
 
          
 Attorneys for Plaintiff: Gordon P. McLaughlin, District
 Attorney, Eighth Judicial District Russell Connelly, Deputy
 District Attorney Fort Collins, Colorado
 
 
          
 Attorneys for Defendant: Sidley-MacKie LLC Andrew
 Sidley-MacKie Fort Collins, Colorado
 
 
          
 Attorneys for Amicus Curiae ACLU of Colorado: Timothy R.
 Macdonald Emma Mclean-Riggs Denver, Colorado
 
 3
 
          
 JUSTICE SAMOUR delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
 JUSTICE GABRIEL, and JUSTICE BERKENKOTTER joined.
 
 
          
 ORDER MADE ABSOLUTE
 
 
          
 SAMOUR, JUSTICE
 
 4
 
          ¶1
 This original proceeding stems from the district court's
 denial of the defense's request for a second-opinion
 competency evaluation. The court explained that it had
 obliged the request for an initial evaluation "merely
 for the benefit of the Defense," not because it had any
 real concerns about Austin Rhys McGee's competency. But
 once it had ordered the initial evaluation and that
 evaluation had been completed, the court could not deny the
 defense's request for a second-opinion evaluation by
 finding, retroactively, that the initial evaluation was
 sought as a dilatory tactic and shouldn't have been
 ordered in the first place. By that time, the proverbial
 train related to the propriety of the initial evaluation had
 left the station. Colorado statutory law provides that a
 trial court must order a second-opinion competency evaluation
 when, as here, it is timely requested. Thus, the court erred
 in denying McGee's motion for such an evaluation.
 Accordingly, we make absolute the order to show cause, and we
 remand the case for further proceedings consistent with this
 opinion.[1]
 
 5
 
          I.
 Facts and Procedural History
 
 
          ¶2
 The prosecution has charged McGee with numerous felony sexual
 offenses involving a child. During the span of three years
 (between April 2022 and April 2025), multiple attorneys
 representing McGee have requested, and the district court has
 ordered, several competency evaluations. The first of those
 evaluations was completed by Dr. Alex Rodrigues at the
 Colorado Mental Health Hospital in Pueblo
 ("CMHHIP"); he concluded that McGee was competent.
 Thereafter, defense counsel timely asked for a second-opinion
 evaluation, and that request was granted. Dr. Nicole Mack, a
 private forensic psychologist, performed the second-opinion
 evaluation and concurred with Dr. Rodrigues that McGee was
 competent. Neither party objected to the conclusions of Drs.
 Rodrigues and Mack, so the court made a final determination
 that McGee was competent.
 
 
          ¶3
 Approximately a year later, the issue of competency was
 raised again when new defense counsel asked for an
 evaluation. The court granted the request and ordered a
 second evaluation at CMHHIP.[2] Pursuant to the court's
 order, Dr.
 
 6
 
 Steven Gale conducted a competency evaluation and opined that
 McGee was competent. Without objection from the prosecution
 or the defense, the court once more made a final
 determination that McGee was competent.
 
 
          ¶4
 Because McGee then entered a plea of not guilty by reason of
 insanity, the court ordered a sanity evaluation at CMHHIP.
 Although that order did not include a request for a
 competency evaluation, the examiner, Dr. Ann Joseph, included
 a brief section in her report opining that McGee was
 competent.
 
 
          ¶5
 In May of 2025, current defense counsel re-raised the issue
 of McGee's competency in a detailed written motion
 seeking yet another competency evaluation. That motion
 incorporated a psychological evaluation prepared by a
 defense-retained expert, Dr. Lila Kimel. Although Dr. Kimel
 didn't form an opinion related to competency, she
 diagnosed McGee with multiple conditions: autism spectrum
 disorder, attention-deficit/hyperactivity disorder,
 generalized anxiety disorder, unspecified bipolar and related
 disorder, and post-traumatic stress disorder.
 
 
          ¶6
 The court granted the latest request. This time, Dr. Sarah
 Velsor performed the evaluation at CMHHIP in June 2025. She
 concluded that McGee was competent. Defense counsel then
 moved for a second-opinion evaluation and a hearing.
 
 7
 
          ¶7
 On June 30, 2025, the court issued an order denying the
 request for a secondopinion evaluation ("June 30
 order"). The court explained that it was not an abuse of
 discretion to forego a second-opinion evaluation because the
 defense's motion raised neither "new indic[i]a of
 incompetency nor a different medical or psychological
 explanation regarding the defendant." Continuing, the
 court noted that McGee had already been found competent
 during four competency evaluations-including the
 second-opinion evaluation that followed the very first
 evaluation-and was not entitled to "a fifth competency
 evaluation." The June 30 order did not address the
 request for a hearing.
 
 
          ¶8
 The defense immediately moved for clarification, asking the
 court to rule on the request for a hearing. The court then
 issued a more detailed order on July 1, 2025 ("July 1
 order"). Although the court granted the request for a
 hearing, it stood by its denial of the request for a
 second-opinion evaluation:
 
 
 [T]his Court has had roughly four years with Mr. McGee before
 it and multiple attorneys representing the same concerns
 Defense Counsel has raised .... Despite the Court having no
 concern regarding the Defendant's competency, the Court
 obliged an evaluation merely for the benefit of the Defense
 but made a record that the Court does not share any concerns.
 This is due to the Court's long history with the
 Defendant, the number of evaluations all finding Mr. McGee
 competent to proceed, and no change in Mr. McGee's
 presentation before the Court. In fact, the Court has had a
 series of longer hearings with Mr. McGee present in Court and
 appearing virtually with no concern in any changes of his
 behaviors before the Court. The truth is, Mr. McGee has been
 clear that he does not want to have the case litigated and
 has created a multitude of reasons to delay the case from
 proceeding over the course of the last four years. Within
 reason, the
 
 8
 
 Court has allowed more than what would have been necessary to
 protect Mr. McGee's rights ....
 
 
          ¶9
 McGee timely filed a C.A.R. 21 petition in our court, and we
 agreed to exercise our original jurisdiction. We explain next
 why exercising our original jurisdiction is appropriate in
 this case.
 
 
          II.
 Original Jurisdiction
 
 
          ¶10
 The exercise of our original jurisdiction under C.A.R. 21 is
 entirely within our discretion. In re People in Int. of
 S.G.H., 2025 CO 59, ¶ 19, 578 P.3d 505, 509. C.A.R.
 21 provides an extraordinary remedy that's narrow in
 scope; it is limited both in purpose and availability.
 Id. We are justified in exercising our original
 jurisdiction "when an appellate remedy would be
 inadequate, when a party may otherwise suffer irreparable
 harm, or when a petition raises 'issues of significant
 public importance that we have not yet considered.'"
 People v. Rowell, 2019 CO 104, ¶ 9, 453 P.3d
 1156, 1159 (citations omitted) (quoting Wesp v.
 Everson, 33 P.3d 191, 194 (Colo. 2001)).
 
 
          ¶11
 McGee asserts that his petition raises a novel legal issue of
 significant public importance worthy of our immediate
 attention and that he lacks an adequate appellate remedy
 because any harm resulting from an erroneous competency
 finding would be irreparable. We agree.
 
 
          ¶12
 First, although we have addressed when a trial court may deny
 a request for a competency evaluation, see People v.
 Lindsey, 2020 CO 21, ¶ 22, 459 P.3d 530, 535,
 
 9
 
 we have not spoken on whether, after such a request is
 granted and a competency evaluation is conducted, a court may
 deny a timely request for a second-opinion evaluation.
 Considering the importance of competency in criminal
 proceedings and considering further that we have never
 undertaken an analysis of the statutory provisions related to
 second-opinion evaluations, this is an issue of first
 impression that is deserving of our prompt consideration.
 
 
          ¶13
 Second, McGee has no adequate appellate remedy. Forcing him
 to wait to raise the issue on direct appeal would not be
 appropriate "because the harm resulting from an
 erroneous finding of competency necessarily occurs at the
 time of such finding, regardless of any ruling on
 appeal." In re People in Int. of J.D., 2025 CO
 14, ¶ 8, 567 P.3d 138, 141. If McGee proceeded to trial
 without the secondopinion evaluation he requested this past
 June, we would run the risk that he'd be convicted and
 sentenced to prison while incompetent. Notably, some of the
 charges he faces carry a mandatory prison sentence.
 
 
          ¶14
 Accordingly, we agree with McGee that this is a proper case
 for the exercise of our original jurisdiction. We therefore
 proceed to analyze the legal issue presented.
 
 10
 
          III.
 Analysis
 
 
          A.
 Standard of Review
 
 
          ¶15
 To answer the question raised by McGee, we must interpret
 some of the statutory provisions addressing competency
 proceedings. Questions of statutory interpretation are
 questions of law, which we review de novo. People v.
 Hollis, 2025 CO 54, ¶ 19, 576 P.3d 147, 151.
 
 
          B.
 The District Court Erred in Declining to Grant McGee's
 June 2025 Request for a Second-Opinion Evaluation
 
 
          ¶16
 We're no strangers to Colorado's competency statutory
 framework. Just a handful of years ago, we provided a brief
 recap of the mechanism set forth in section 16-8.5-102,
 C.R.S. (2025), and section 16-8.5-103, C.R.S. (2025), for a
 party to raise concerns related to a defendant's
 competency in a criminal case.[3]Lindsey, ¶ 21, 459
 P.3d at 535. We explained in Lindsey that if the
 defense or the prosecution has reason to believe the
 defendant is incompetent, either may ask the
 
 11
 
 court to determine the issue of competency.[4] Id.
 (relying on § 16-8.5-102(2)(b)). In the event either
 party properly raises the issue of the defendant's
 competency, the court may: (1) make a preliminary finding of
 competency or incompetency; or (2) determine that it has
 insufficient information to make such a preliminary finding.
 Id. (citing § 16-8.5-103(1)(a), (2)). If the
 court makes a preliminary finding and neither party timely
 objects to it, that preliminary finding becomes the final
 determination of competency or incompetency. Id. at
 ¶ 21 n.7, 459 P.3d at 535 n.7. However, if a party
 timely objects to the preliminary finding, the court must
 order a competency evaluation at CMHHIP. Id. at
 ¶ 21, 459 P.3d at 535 (citing § 16-8.5-103(2)).
 Lastly, if the court determines that it lacks sufficient
 information to make a preliminary finding, it must likewise
 order a competency evaluation at CMHHIP. Id.
 
 
          ¶17
 But we hastened to add in Lindsey that the statutory
 mandate directing trial courts to make a preliminary finding
 or determine that there is insufficient information to make
 such a finding "is not triggered unless the [party]
 raising the competency issue satisfies certain threshold
 requirements in section 16-8.5-102(2)(b)." Id.
 at ¶ 22, 459 P.3d at 535. Specifically, the party
 raising the
 
 12
 
 issue of competency must make a motion "in
 writing," certify there is "a good faith doubt that
 the defendant is competent to proceed," and "set
 forth the specific facts that have formed the basis for the
 motion." Id. (quoting § 16-8.5-102(2)(b)).
 Because the record in Lindsey supported the trial
 court's finding that the defense had failed to comply
 with the last of these threshold requirements, we concluded
 there was no abuse of discretion in denying the motion for a
 competency evaluation. Id. at ¶ 23, 459 P.3d at
 535.
 
 
          ¶18
 Thus, Lindsey establishes both that a motion for a
 competency evaluation must fulfill certain threshold
 requirements and that a trial court has the discretion to
 reject "the rare" motion that fails to do so.
 Id. at ¶ 35, 459 P.3d at 538. It follows that a
 trial court is not required to order a competency evaluation
 whenever one is requested; if a request for a competency
 evaluation fails to satisfy the threshold requirements, the
 trial court has the discretion to deny it. Id.
 
 
          ¶19
 Consistent with Lindsey, the parties in this case
 agree that, assuming the defense's May 2025 motion for a
 competency evaluation failed to meet the threshold
 requirements, the court had the discretion to deny
 it.[5]
 But, following the order granting the May 2025 motion and
 McGee's completion of the June 2025 competency
 evaluation, could the court deny the defense's request
 for a second-
 
 13
 
 opinion evaluation? And, relatedly, could the court
 retroactively rule on June 30 and July 1 that the May 2025
 motion was made for dilatory purposes and should not have
 been granted to begin with? To answer these questions, we
 must delve further into the competency statutory framework.
 
 
          ¶20
 A second-opinion evaluation is an evaluation "that is
 performed by a competency evaluator and that is not performed
 by or under the direction of, or paid for by, the department
 [of human services]." § 16-8.5-101(18), C.R.S.
 (2025). Either party may request a second-opinion evaluation,
 a hearing, or both within fourteen days after receipt of a
 court-ordered competency evaluation report from
 CMHHIP.[6] § 16-8.5-103(3). If neither party
 makes a timely request for a secondopinion evaluation or a
 hearing, then the court must determine, based on the
 information before it, whether the defendant is competent to
 proceed. § 16-8.5-103(5). In the event a party requests
 both a second-opinion evaluation and a hearing, the court
 must not set the hearing until it has received the report
 from the second-opinion evaluation. § 16-8.5-103(4). The
 court must provide the report from the second-opinion
 evaluation to the parties and CMHHIP, and if a hearing has
 been requested, it must do so prior to the hearing. §
 16-8.5-103(4), (6). At any hearing held, the party asserting
 that the defendant is incompetent bears the
 
 14
 
 burden of submitting evidence and proving incompetency by a
 preponderance of the evidence. § 16-8.5-103(7).
 
 
          ¶21
 Of particular relevance here, not only may the defense timely
 request a second-opinion evaluation, it may ask to have an
 evaluator of its own choosing perform that evaluation. §
 16-8.5-106(1), C.R.S. (2025). And if the defense asks for an
 evaluator of its own choosing, the court must "order
 that the competency evaluator chosen" by the defense
 "be given reasonable opportunity" to perform the
 second-opinion evaluation. Id. When a defendant who
 timely requests a second-opinion evaluation is indigent, the
 court must pay for the evaluation. § 16-8.5-107, C.R.S.
 (2025).
 
 
          ¶22
 The report from a second-opinion evaluation performed by an
 evaluator chosen by the defense must be provided to the court
 and the prosecution within a reasonable amount of time before
 any hearing. § 16-8.5-106(2). Upon receipt of that
 report, the court must forward it to the department of human
 services. Id.
 
 
          ¶23
 As this summary demonstrates, none of the provisions in the
 competency statutory framework vests discretion in trial
 courts to deny a party's timely request for a
 second-opinion evaluation once a court-ordered evaluation has
 been completed by CMHHIP. See generally People in Int. of
 W.P., 2013 CO 11, ¶ 31 n.10, 295 P.3d 514, 524 n.10
 (observing in passing that the house bill that amended some
 of the statutory provisions pertinent here gave criminal
 defendants the right to a
 
 15
 
 second-opinion evaluation that's timely requested).
 Rather, once a court-ordered evaluation has been completed by
 CMHHIP, if a party timely requests a second-opinion
 evaluation, it is entitled to it. Further, if the defense
 wishes to have a second-opinion evaluation performed by an
 evaluator of its own choosing, the court must order that the
 chosen evaluator be given a reasonable opportunity to
 complete the evaluation.
 
 
          ¶24
 Here, the court erred in three ways. First, as the June 30
 order reflects, the court required the defense to show that
 there was "new indic[i]a of incompetency" or
 "a different medical or psychological explanation
 regarding the defendant" to justify a second-opinion
 evaluation. As mentioned, our competency statutory framework
 entitles a party to a second-opinion evaluation upon request,
 so long as the request is timely. In this case, the
 defense's request for a second-opinion evaluation was
 timely.
 
 
          ¶25
 Second, the June 30 order demonstrates that the court viewed
 the second-opinion evaluation requested by the defense this
 past June as the "fifth competency evaluation." It
 is true that the defense was seeking the fifth competency
 evaluation in these proceedings. However, it is also true
 that the defense was timely requesting a second-opinion
 evaluation for the purpose of testing or challenging Dr.
 Velsor's conclusion of competency following the June
 
 16
 
 2025 court-ordered evaluation at CMHHIP. And, as we've
 explained, under our competency statutory framework, the
 defense was entitled to do so.
 
 
          ¶26
 And third, as the July 1 order indicates, the court believed
 that it could retroactively find that it shouldn't have
 ordered the June 2025 competency evaluation because the
 defense requested it for dilatory purposes. Although we
 appreciate the court's frustration with the number of
 competency evaluations that have been performed in this case,
 not to mention the lengthy delays those evaluations have
 caused, the court lacked the authority in July to
 retroactively nullify the May 2025 order. Once the evaluation
 ordered in May 2025 was completed, the court could not
 determine that the defense's motion for that evaluation
 should not have been granted and that the defense was
 therefore not entitled to a second-opinion evaluation.
 Whether correctly or incorrectly ordered, the completion of
 the June 2025 competency evaluation entitled the defense to a
 second-opinion evaluation.
 
 
          ¶27
 In sum, while we commend the court for its patience
 throughout this litigation, once the June 2025 competency
 evaluation was completed, the court had no choice but to
 grant the defense's timely motion for a second-opinion
 evaluation. Because it denied the motion instead, it erred.
 
 17
 
          IV.
 Conclusion
 
 
          ¶28
 For the foregoing reasons, we make absolute the order to show
 cause. On remand, the district court must grant the
 defense's June 2025 request for a second-opinion
 evaluation.
 
 
 ---------
 
 
 Notes:
 
 
 [1] The issue raised by McGee in his
 C.A.R. 21 petition is as follows:
 
 
 1. Whether the district court erred by denying Mr.
 McGee his statutory right to a second competency evaluation
 after defense counsel raised the issue of Mr. McGee's
 competency and the district court ordered an initial
 competency evaluation by a state doctor.
 
 
 [2] In a case like this one, "second
 evaluation" could be understood as referring to either
 the second court-ordered CMHHIP evaluation or the type of
 evaluation requested to test or challenge an initial
 court-ordered CMHHIP evaluation. Although our statutes refer
 to the latter as a "second evaluation,"
 see § 16-8.5-103(3)-(6), C.R.S. (2025), to
 avoid confusion, we refer to the second court-ordered CMHHIP
 evaluation as the "second evaluation," and we refer
 to any evaluation ordered to test or challenge an earlier
 evaluation as a "second-opinion
 evaluation."
 
 
 [3] A defendant who is incompetent may not
 be tried or sentenced. § 16-8.5-102(1). Moreover, while
 a defendant remains incompetent, the court may not entertain
 pretrial issues that are incapable of a fair determination
 without the defendant's full participation. Id.
 "Incompetent to proceed" means that, as a result of
 a mental disability or developmental disability, the
 defendant lacks (1) sufficient present ability to consult
 with counsel "with a reasonable degree of rational
 understanding in order to assist in the defense" or (2)
 "a rational and factual understanding of the criminal
 proceedings." § 16-8.5-101(12), C.R.S.
 (2025).
 
 
 [4] If the court itself has reason to
 believe that the defendant is incompetent, it must suspend
 the proceedings and determine the issue of competency. §
 16-8.5-102(2)(a).
 
 
 [5] We need not, and thus do not, pass
 judgment on whether the defense's May 2025 motion for a
 competency evaluation met the threshold requirements.
 
 
 [6] The court may decide on its own to
 order a second-opinion evaluation, but if it does so, it must
 pay for it. § 16-8.5-103(4).
 
 
 ---------